The trial court's admission of the empty rifle magazines in this case was reversible error because it was unfairly prejudicial and was not harmless error. The location of the empty magazines lying in a trunk with nothing more in there was far, was nowhere near the highly secreted drugs in a very sophisticated compartment, non-factory compartment of a vehicle. Therefore, there was very low probative value toward knowledge of the contents of the vehicle, specifically the drugs. It was highly prejudicial, especially in the manner in which the government introduced the empty rifle magazines. The evidence was brought out through an agent who testified he was an ex-military policeman for 20 years. He explained that he had experience with these types of weapons. He mentioned with undue attention regarding these empty rifle magazines, he said caliber 5.56, M16, M4, AR-15 rounds. In another statement... Was there any objection as to his evidence regarding the caliber of the cartridges? Yes, Your Honor, there was. I thought there wasn't. I thought that we were reviewing that for plain error. No, Your Honor. It's actually for abuse of discretion. Could you give me a citation to that? In the record at the motion in limine, you can see, I believe it was at ER-10, if I'm not mistaken. At the motion in limine, the defense presented to the court an alternative to bring out the evidence regarding these empty rifle magazines, in that I submitted that Mr. Garcia admit to the ownership of the contents of the trunk, but trial the trial court ultimately ruled for the admission of these rifle magazines after initially stating that these two empty magazines with no firearms and no ammunition as having very little probative value. What's at issue is whether he had knowledge. Isn't that right? Knowledge as to the drugs in the secreted compartment. As to the drugs. Yes, Your Honor. Right. Yes. And... Might marginally be relevant that he knew what he had in the car? Absolutely, it's marginally relevant. But when you do the balancing test under 403, that you'll see that there was unfair prejudice. And unfair prejudice is a risk that a verdict may be tainted by improper considerations, and that's the Supreme Court decision of Old Chief. And in this case, we have this testimony in another statement by the agent. He said M16 round 5.56, and another statement M4 AR-15. It will fit in any of these weapons. Also a .223. And each magazine will carry 30 rounds. This was the type of testimony that would elicit a very visceral response from the jury saying, Oh, my God, look at this horrible man. He had these assault rifle magazines granted, albeit empty, in the open trunk of his vehicle. But it is very clear from the evidence that the cocaine was in one of the most highly sophisticated secreted compartments under the undercarriage of the vehicle. So it does not go to the knowledge of the cocaine. And, in fact, my client did admit that those empty rifle magazines were his. This was a special case. Well, you were – apparently the defense was willing to stipulate that he owned whatever was in the trunk. Yes. So there's some connection between – I mean, you weren't trying to say what's in the trunk altogether is irrelevant. There's some, granted, pretty marginal connection between his knowledge of what's in the vehicle and what might be elsewhere in the vehicle. And no doubt you can argue that it's secreted, and that doesn't mean he knows what's in the hidden compartment. But, frankly, this seems marginal to me on both sides, because the prejudice part seems pretty marginal, too. Why should – why should the prejudice – why should 403 weigh that direction instead of the other direction? Because of the nature of what it was, which were these assault rifle magazines. Well, if they were assault rifles, I can understand it. In other cases I've seen have to do with a whole lot of guns. Here we've got what amount of empty boxes, don't we? Does that have nearly the prejudicial force that a lot of extra guns has? I think that if you compare it to a lot of extra guns, of course it has less prejudice. But it was the manner in which – it's not just simply stating that there were two empty magazines. There were three agents that testified. And upon – in the direct examination, every single one of those agents mentioned the empty rifle magazines. It wasn't just brought up and dropped. And that's exactly what we tried to avoid in the pretrial motion in Limoney, that it would not be used for any improper – and it not be used to inflame the emotions of a juror. What kind of instruction did the judge give about that? Did he say that it could be used only for the purpose of establishing the knowledge? There was no instruction with regard to that. In the defense, I know that the government mentioned that the defense made no request for a limiting instruction. But the fact of the matter is the defense didn't want the mention at all of any rifle magazine. And in requesting a limiting instruction would have given yet more emphasis to these empty rifle magazines, which is exactly what the defense was trying to do, was take away from the focus of these magazines and put it on the issue, which is knowledge of the cocaine in a highly secreted, very sophisticated non-factory compartment here. Did the jury know that this car had been crossing the border several times? Yes, Your Honor. That was brought out through direct examination of one of the agents that went through day by day and time by time as to the – And it's clear, isn't it, from the evidence that the defendant was available at those times. He was maybe in New York, but at that time there were no crossings. At the times that there was the crossings that did not intercept with the New York trip. But that brings me to the point that I wanted to make regarding the bus ticket and the plane ticket. The defense tried to introduce those without defense testimony or without any other witness testimony just so that the jury had the opportunity to see that these tickets had either been purchased or reserved. But the defense was not even given that opportunity. Was there any foundational testimony that the man actually used the tickets? No. There was no foundation as to the use. How was it relevant then? Because it goes – Why not bring in some grocery receipts? Because it goes to – it was for the jury to determine the weight. And the fact that we had – There has to be some relevant foundational testimony before the tickets are relevant to the jury. His idea was, I want to show that I was in New York when the car was being prepared for this cocaine travel. Well, he could stand and say, I was in New York and these are my tickets. He chose not to do that. The tickets by themselves don't show that he was in New York. It doesn't show that he was in New York, but it's a reasonable inference that the jury should have been given the opportunity to make. Why? The tickets could have been used by somebody else. Well, Your Honor, the fact of the matter is that is what the jury as a fact finder is able to determine make these reasonable inferences, and that was not even permitted in this particular case when there was no issue with regard to foundation. Well, counsel, it seems to me that if that had come in, it would have bolstered the government's case because it would have shown there were these crossings, but then there was a gap in crossings, and that's when he was gone, and then it resumed again. So it seems to me it certainly couldn't have been harmful. Your Honor, it's actually a good point that you brought up. The crossings were only specific as to the vehicle and not as to the person driving the vehicle, and there was evidence that the vehicle was owned by another person because if you see from the record, there was a temporary registration that it was owned by another person. Your Honor, I also would like to reserve the remaining time for rebuttal. Thank you very much. You may do so. Good morning. May it please the Court. My name is Reese Bostwick. I'm an assistant United States attorney from Tucson, Arizona. I represent the government in this matter. As to the last point that defense just made, the testimony at trial that was actually presented to the jury was that the defendant told the agents post-arrest nobody else had control of the vehicle for the six months prior to the seizure, that he owned it, and he also told them there was only one key. So the point that Your Honor made about it would have bolstered the government's case if the evidence had come in about the airline records is exactly the point you made, that there were crossings in a series of numbers when the defendant was purportedly available and not out of the state of Arizona. And in fact, there's a series of crossings on January 17th, 18th, 21st, and then purportedly the defendant is on this trip from the 22nd through 25th, and then purportedly when he returns from the trip, there are two crossings on the 29th, a crossing on the 31st approximately 24 hours prior to the seizure, and on the February 1st, the defendant is seized crossing this vehicle. And so the evidence that the jury had wasn't that there was anybody else that had a key or was using this vehicle, and that testimony was introduced to the jury at the trial. As to the first issue that was raised this morning, the magazines, the judge made a very specific finding about the probative value. The testimony, again, that was introduced at trial was that the defendant had owned this vehicle for six months prior to the seizure, that he had the only key, that nobody else had had control of it. And part of the record that I think Judge Zapata made at trial was that this defendant in pre-primary when he was first asked, they hold up the magazine. And Judge Zapata made a finding, we're not talking about, I mean, I realize the defendant in this case characterized them as assault rifle, and at the motion in limine he called them fully automatic magazines. Well, the magazine isn't what's automatic, it's the weapon. And these were empty magazines. We had them at the motion in limine. And when I tried to present them to the judge, he says, I know what they are, they're magazines and there's nothing exotic about them. They're just empty magazines. And so what he determined, and he made this record, is that the fact that the defendant owns and controls this vehicle and the magazine is found in his vehicle, and the court also pointed out, he says, and when he's first asked at pre-primary, they say, hey, what about these magazines? He says, those aren't mine. I don't know how they got in there. And they're thinking, well, that's odd. So the agents during the course of this investigation, they noticed that some drain plugs that normally are there were pulled up and they weren't available. They had a dog. The dog was alerting on the vehicle. And so when they opened up the trunk in pre-primary, there was nothing else in the trunk. The defendant owned this vehicle for six months. There was nothing else in the trunk but these coupled magazines, these two magazines. And so when they asked him about it, he says he doesn't know. The agent climbs into the trunk, Zamorano, climbs into the trunk and uses a buster for a density meter and gets a high reading. So at that point, they say, okay, we're going to go down to secondary and we're going to get this vehicle out of the line. We're going to inspect it more thoroughly. And so during that process, they say, well, what about these magazines? He says, oh, yeah, yeah, those are mine. I forgot they were in there. And then when they get to secondary, he again repeats. He says, yeah, those are mine. I forgot they were in there. So that's one of the reasons which the trial judge gave for finding it was more probative than prejudicial, the impeaching nature of his inconsistent statements? I would say, yes, that was part of it, Your Honor. If you read the transcript, initially the motion in limine was more on the area that it was unduly prejudicial. And then during the course of the hearing, it kind of swung back to probative. And so the judge, I think, was going back and forth. But, yeah, at one point he discusses that. And then what I thought was I disagreed with it, but I agreed to do it just because he said, well, this may create an issue on appeal. And I said, then if it does, then we'll do it. And the point, his point was specifically that he thought it went to the fact that the defendant had first denied ownership and knowledge and then twice admitted ownership. But the other thing that the judge went off on, he said, well, during the course of these And he wanted to, quote, complete the picture. And we kind of go back and forth about that, about what the Ninth Circuit law provides. And at one point he says, well, this could create an issue. And I says, Judge, if that's your position, I will allow, even though I disagree with it, I will allow the defendant's exculpatory hearsay statement to come in during my case. And I said, and we'll get with counsel about how you want to do that, my stipulated waiver. As it turns out, during the course of cross-examination, defense counsel asked my agent. And he says, well, did you ask my client about the cocaine? And obviously, normally my position would have been that's self-serving hearsay. It's inadmissible. He has to testify in order to say what he said. But I allowed it based on the dialogue I'd had with the judge at the motion in limine. And his response was, yeah, he denied knowing that there was cocaine in the car. So in that context, the judge specifically said, well, if that happens, then we really don't have a problem here. And that's what happened. So when Judge Zapata said that, even though I was in disagreement, I said, well, if he's got a concern about that, then I'm going to allow it. And I said it on the record. I said, I want a clean case, too, Judge. I mean, I don't want any issues to be created here. And so when he's making this record and he's saying, well, this could be a concern, I said, well, then let's deal with the concern. And so that's why we did it that way. And it came in. And then when you view, I mean, there's nothing else in the transcript. If you read the trial transcript and there's nothing else in the briefs that talks about the inflammatory nature. They talk about the government made use of this. What was the relevance of being an assault rifle magazine or the caliber of an assault gun? I mean, if he says those are my magazines, they could be bullet magazines. They could be reading magazines. He says they're my magazines. I know what's in my car. Right. Okay. What was the relevance, other than to inflame the jury, that this man must have been a heavyweight drug dealer because he was carrying assault rifle magazines in his car? A review of the transcript I don't think supports that presentation by the government. Defendant at all times was the one that portrayed these as assault rifle. Originally they were automatic rifle magazines. The only thing. That was invited error if it was error. Well, yeah. I mean, to the extent that it was trying to make much ado about, gee, the dangerous nature of these. And that's why at the hearing I took him to the hearing. And I said, Judge, your clerk has those. You can see him. And he says, I know what they are. And he says, and there's nothing exotic about them. So the description about this is really a creation. Your position that the evidence of it being assault rifles and the caliber came out by the defense rather than the prosecution? Not the caliber. The two questions, the two questions at trial that we're trying to ask the witness for foundational purposes, because there were witnesses there. Agent Zamorano would have had no ability to describe these magazines. And so the one agent that did had been in the military. And so during the foundation for, okay, you guys found these magazines. What exactly are those? And the two questions, the original question. It's not relevant what exactly are those. As long as the defendant says they're mine, they were in my car, they could be tennis shoes. It doesn't make any difference. Well, I guess so the jury would know there was nothing exotic about them. They were .223 magazines. That was it. That was the caliber. They were .223. And I think if you look at the transcript, originally my inquiry, because there were a series of pictures and some other evidence that had already been admitted in advance, we said, okay, we're going to admit this and then we'll go along. And at that point I asked, I said, are these exhibits admitted? It was no. And I said, okay, then I have to lay the foundation for this. So I asked the agent, are you familiar with these magazines? Yes. Well, how is it that you're able to tell the jury anything about them? And he went to the background. And my first question was, well, what's the caliber? And the defense objected to that. And the judge said, no, go ahead and answer that. And the agent appears to be flustered because then he's all over. And I'm trying to draw him back in. And finally I just say, aren't these .223? And he, oh, well, yes, yeah, they can fire that. And so then I said, okay, and what's the capacity? Thirty. And that was it. There was no more advancement by the government. We moved on to a different area. And so my point is that the characterization at all time about automatic and inflamed, these were all arguments made by defense counsel. These are not arguments that were presented by the government. They're not characterizations described by the government. And certainly that's not how it was argued at closing arguments because there's nothing, again, in the defendant's brief about, oh, and here's what the government said to inflame the jury in closing arguments. It was more an issue of knowledge. And there was a question asked of the defendant about was there any instruction, limited instruction. Judge Zapata specifically invited defense counsel at the time that he ruled at the motion that he was going to do it. He says, you can submit a limited instruction if you'd like. Defense counsel has explained now they chose not to and they didn't want to. But all the time they're complaining about how these were presented and argued to the jury. And I submit that's not the context in there presented. And then my last point would be that in any respect, if you look at the evidence in this case, it was overwhelming. If you go through the record, the defendant was employed as a welder. Well, guess what? This was a sophisticated weld-up compartment underneath this vehicle. In the primary, the defendant was rigid. He looked straight ahead. He refused eye contact. He was nervous. He had $1,044 in U.S. currency in his pocket. The compartment was secured by a hex head screw. The hex key wrench used to remove that screw to access the 20 kilograms of cocaine was in that. For those reasons and the others in the record, I would ask the Court to affirm the conviction in the sentence in this case. Thank you. Thank you. Rebuttal. There was no invited error by the defense. There was no testimony or nothing brought out by the defense in front of the jury regarding the automatic nature of the weapon. This is a case where I'd like to look at the quote from Old Chief. The magazines here were not a missing link in the government's proof. And if you look at Old Chief, it says, a convincing tale can be told with economy. And it goes on to say, but when economy becomes a break in the natural sequence, here we don't have an issue about a break in the natural sequence of things. It was only by the government that this statement after statement, caliber 5.56, M-16, M-4, AR-15 rounds, M-16, round 5.56, M-4, AR-15, will fit in any of these weapons, also .223. And each magazine will carry 30 rounds. With two magazines, that's 60 rounds. What does that plant do to the jury? It inflames the jury. This is not an issue of a missing link. The probative value was very low in comparison to the prejudice was very, very high in comparison to the probative value. And lastly, I'd like to mention that Judge Zapata failed to consider some very important 3553 factors in a 102-month sentence was substantively unreasonable. Thank you very much. Thank you. We thank both counsel for the argument. The case just argued is submitted.
judges: Fletcher B. , Clifton, Bea